## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

M.C. through her mother and next friend,
ERIN CHUDLEY;
S.W. through her mother and next friend
HELEN WHISLER; and G.A. through her
mother and next friend DEBORAH
ALTENHOFEN

Plaintiffs,

       v.

SHAWNEE MISSION UNIFIED SCHOOL
DISTRICT No. 512 (a/k/a the "SHAWNEE
MISSION SCHOOL DISTRICT") and
KENNETH SOUTHWICK, in his individual
and official capacity as Interim
Superintendent of Shawnee Mission School
District.

Defendants.

Case No. _____

## COMPLAINT

Plaintiffs M.C., S.W., and G.A., by and through their undersigned counsel, parents and

next friends, allege as follows:

## INTRODUCTION

1. This is an action for a declaratory judgment, injunctive relief, and damages brought

   about by the Shawnee Mission School District's infringement of Plaintiffs' First

   Amendment rights to speech and press during the April 20, 2018 national school

   walkouts, and its retaliation against students for the exercise of those same rights.

2.  All of the Plaintiffs in this action are students in the Shawnee Mission School District who attempted to either engage in political debate about the subject of gun violence by participating in a student-led, school-permitted walkout of April 20, 2018, or to document these same walkouts in their role as student journalists.

3.   Instead of allowing these students to exercise their First Amendment rights, however, the Shawnee Mission School District and its representatives unconstitutionally prohibited students from even mentioning the topic of gun violence in their protests. When students resisted the District's efforts at censorship, District officials interrupted students, ordered them to stop speaking, threatened students with discipline and, in some cases, confiscated the tools that students were using to document the protests.

4.  It is clear, from the District's own official statements, that the decision to restrict students from using terms such as "gun violence," or from even mentioning the topic of school shootings, stemmed from the District's wish to avoid controversy and discomfort, and not out of any legitimate pedagogical interest, nor any particularized fear that use of these terms would materially and substantially disrupt the work and discipline of the school.

5.  Although District officials including the interim superintendent, Defendant Kenneth ("Kenny") Southwick, have issued repeated apologies for "anything that resulted in student censorship," they have refused to acknowledge that their actions violated students' rights.  Southwick instead has begun an open-ended investigation to first and foremost evaluate, in his own words, "what it was that we did right." In meetings with students after the fact, Southwick has appeared to be more interested in retroactively

justifying the District's actions than in ensuring the future protection of students' First Amendment rights.

6. Because of the direct injury to their First Amendment rights in connection with the protests, and because of the chilling effect that Defendants' censorship has on students' current and future speech, Plaintiffs are at risk of irreparable harm. Injunctive and declaratory relief is therefore necessary to prohibit ongoing and future violations of students' First Amendment rights by Defendants.

7. On information and belief, the violation of Plaintiffs' First Amendment rights occurred pursuant to an official policy or custom of the Shawnee Mission School District, implemented by its authorized policymakers, and from a failure to properly train employees or implement a policy protecting students' First Amendment rights, meriting the imposition of municipal liability under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as to Plaintiff's claims under 42 U.S.C. §1983 and the First and Fourteenth Amendments to the United States Constitution.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1367(a), as to Plaintiff's claims under the Kansas Student Publications Act.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because all of the events giving rise to the claims in this suit occurred in the District of Kansas.

## PARTIES

11. As discussed more fully herein, all of the Plaintiffs in this action are minors who participated in, attempted to participate in, or attempted to document the National School Walkout protests occurring on April 20, 2018.

12. Defendant Shawnee Mission Unified School District No. 512 ("SMSD" or the "District") is a public school district located in Johnson County, Kansas, established and existing under the laws of Kansas, and is the third-largest public school district in the state of Kansas.

13. SMSD is a "person" within the meaning of 42 U.S.C. §1983.

14. Defendant Kenneth Southwick is the interim Superintendent of and an employee of SMSD. At all relevant times, Defendant Southwick was acting under color of state law. He is sued in his individual and official capacities.

15. Plaintiff M.C. is an eighth-grade student enrolled in Hocker Grove Middle School within the Shawnee Mission School District. As a minor, Plaintiff brings this action through her mother and next friend Erin Chudley.  Plaintiff M.C. and her mother reside in Johnson County, Kansas.

16. Plaintiff M.C. helped organize a walkout at Hocker Grove Middle School planned for April 20, 2018. Defendants informed Hocker Grove students such as M.C. and their parents that students would not be disciplined if they participated in the walkout.

17. During the walkout of April 20, 2018 at Hocker Grove Middle School, Plaintiff M.C. was one of several students who were interrupted and threatened with disciplinary action by an administrator during their speeches when they mentioned gun violence, as discussed in more detail *infra.*

18. M.C. was suspended for protesting the cancellation of the event and missed two examinations.

19. As a result of being censored and disciplined, M.C. has also experienced distress and a justifiable apprehension of adverse consequences should she engage in First Amendment-protected conduct in the future.

20. Plaintiff S.W. is a junior enrolled in Shawnee Mission North High School within the Shawnee Mission School District. As a minor, S.W. brings this case through her mother and next friend Helen Whisler.  Plaintiff and her mother reside in Johnson County, Kansas.

21. As discussed further *infra,* S.W. is a student journalist who was in attendance at the April 20, 2018 walkout at Shawnee Mission North High School.  She was attempting to document the protests for the school newspaper and yearbook when a school official confiscated the camera she was using and ordered her to leave the scene of the protest, resulting in a direct prior restraint of, and retaliation for, her newsgathering activities.

22. As a result of Defendants' actions, S.W. experienced not only distress but also a justifiable apprehension of adverse consequences should she engage in First-Amendment protected conduct in the future.

23. Plaintiff G.A. is a junior enrolled in Shawnee Mission North High School within the Shawnee Mission School District.  As a minor, G.A. brings this case through her mother and next friend Deborah Altenhofen.  Plaintiff and her mother reside in Johnson County, Kansas.

24. G.A. attended the event primarily as a protestor but also is a student journalist who works for the school newspaper, *The Mission*.

25. G.A. was denied the opportunity to hear the messages that students originally intended to express at the walkout and, because of Defendants' actions, has experienced a

justifiable apprehension of adverse consequences at the District's hands should she engage in First Amendment-protected conduct in the future.

## **FACTUAL BACKGROUND**

26. Students across the country, including the named Plaintiffs in this action and their fellow students, organized a national walkout on April 20, 2018 to advocate for reforms to reduce gun violence in the wake of the tragic Parkland High School shootings in Florida.

27. The date of the protests was selected to coincide with the 19th anniversary of the Columbine High School Massacre, and was specifically for the purpose of demanding reforms intended to reduce the prevalence of gun deaths and school shootings in the United States.

28. It was, therefore, impossible to fully discuss the intended topic of the walkout without using words such as "guns" or "gun violence."

29. Student organizers at various Shawnee Mission School District sites informed administrators well in advance of the protests that they intended to participate in the national walkout.

30. Defendants therefore had ample time to formulate a plan for addressing the protests that did not blatantly and systematically infringe on students' First Amendment rights.

31. Defendants informed parents that students would be permitted to participate in the walkouts without risking discipline. However, Defendants made clear to parents and students at both schools that the walkouts were student-led and optional, and that the District was not sponsoring the event.

32. Students were not necessarily informed in advance of the protests that there would be specific terms they had to avoid as a condition of being allowed to protest, or which had been deemed by the District to be unorthodox or too controversial to mention.

33. On information and belief, however, SMSD had issued a centralized directive to all building administrators, encouraging and directing them to prohibit students from discussing guns, gun control, and school shootings—the central topics of the planned protests — during the walkouts.

34. Specifically, according to SMSD spokesperson Shawna Samuel, the District "encouraged the students to keep the topic to school safety," and steered students away from discussing guns.  *See* Jay Senter, "Tensions mount over Shawnee Mission administration's move to censor, limit access to National School Walkout demonstrations," SHAWNEE MISSION POST, April 23, 2018; https://shawneemissionpost.com/2018/04/23/tensions-mount-over-shawnee-mission-administrations-moves-to-censor-limit-access-to-national-school-walkout-demonstrations-70953.

35. SMSD adopted these guidelines, according to Samuel's statements, because "[a]s a public institution, we cannot take a stand one way or the other on Second Amendment rights." *Id.*

36. In other words, while making clear to students and parents that the event was not school-sponsored speech, Defendants nonetheless made behind-the-scenes plans to impose their own content-based restriction on the protests, out of an abstract desire to avoid controversy.

37. Defendants apparently expected that, when the time for the protests arrived, students would follow SMSD's directives for content of the speeches--and simply comply with the orders to use the district's scripted, generic euphemisms such as "school safety" -- instead of attempting to fully speak their minds.

**Censorship occurring at protests**

38. At Hocker Grove Middle School, students were allowed to begin their scheduled 17-minute protest, but an assistant principal, Alisha Gripp, began to interfere with students' speeches after the second speaker cited a statistic that there had been 19 school shootings in the previous year, and stated that "we would have more shooters who were women, queer, transgender, and people of color if bullying caused school shootings."

39. Gripp informed students, "No shootings, no deaths. If you can't comply with the rules, you'll be removed."

40. Upon information and belief, Gripp confiscated the written remarks of another scheduled speaker because they mentioned gun control.

41. Plaintiff M.C., an eighth-grade student at Hocker Grove, was the third scheduled speaker. She said two lines of her prepared speech, stating that "the school administration wants us to keep this about school violence and not about the real issue here. The real issue is gun violence," before an administrator interrupted M.C. and ordered her to step down from the speaking platform. She complied without protest.

42. Gripp then abruptly declared an end to the event.

43. Because nine minutes remained in the planned 17-minute event, approximately 50 students remained outside with the intention of continuing the planned program.

Gripp then directed the remaining students to disperse, pushing several students toward the school door.

44. A number of Hocker Grove students were then either told that they had been suspended or had detention for participating in the walkout, including M.C., who was sent home for "being the most disruptive child in the school."

45. While Gripp was accosting students who were trying to continue their protest, students who were returning to class were not stopped from exercising speech rights unrelated to the walkout, including loudly yelling, "It's Hitler's birthday today," and "Free Meek Mill!"[1]  According to witnesses, no administrator or teacher tried to censor these students' statements, or aggressively told them to return to class.

46. At Shawnee Mission North High School, students were permitted to hold a walkout program from 10 a.m. to 10:17 a.m on a designated location on school grounds. However, several days before the protests, administrators told students that they could not mention shootings or gun violence.  The students who spoke during the school-permitted walkout time apparently complied with this request.

47. More than 100 students, however, remained outside the school after the end of the school-permitted program to discuss the subjects the school would not allow them to speak about during the approved walkout: mass shootings and gun-policy reforms.

48. Administrators generally permitted students to remain outside during the unsanctioned event, with the exception of student journalists. At the beginning of the unsanctioned walkout program, assistant principal Brock Wenciker expressly directed journalism students to return to the building.

---

[1] Meek Mill is a popular hip-hop artist who was recently freed from prison for parole violations related to drug and firearms charges.

49. Wenciker then approached S.W. and ordered her to hand over the camera she was using, which belongs to the District but was checked out to S.W. for the year to use in her role as a student journalist. Wenciker informed S.W. he believed he could rightfully confiscate the camera because it was school property.

50.  On information and belief, Wenciker confiscated at least one other student's camera during the unsanctioned protest.

51.  During the unsanctioned program, students expressed a diversity of views and proposals on how to reduce gun violence. Some students, for example, advocated for a ban on assault rifles while others argued that schools should arm teachers and school staff.

52. S.W. stayed after school to get the camera back, at which point Wenciker returned it to her without explanation.

### Events Subsequent to Protests

53. The censorship of the students by Shawnee Mission School District has caused a public outcry and has been reported in media outlets nationwide.

54. On April 23, 2018, Plaintiff G.A. spoke to the SMSD board and complained about the censorship activities that took place at her school.  During this meeting, Defendant Kenneth Southwick issued a "personal apology" for unspecified actions, and pledged to fully review the incidents.

55. On April 26, 2018, the ACLU on behalf of several named Plaintiffs in this action, sent the School District a letter demanding that it commit to a proposed corrective action for each impacted student by Thursday, May 3, 2018.

56. The district then issued another "apology" communication to parents issued on Friday, April 27.

57. Despite these repeat apologies, however, it has become clear based on the descriptions that are emerging of administrators' one-on-one meetings or interviews with students, that the school district is more concerned about retroactively justifying its actions than it is with remedying its free-speech and free-press violations.  Nor does the Shawnee Mission School District concede that its policies and actions were unconstitutional, either on their face or as applied to these students.

58. On or about May 2, 2018, Southwick met with S.W. as part of the District's investigation.  When S.W. expressed disappointment that she was unable to continue to document the walkouts after Wenciker confiscated her camera, Southwick dismissed her concerns and asked her why she did not use her iPhone.

59. Southwick also met with G.A. on or about May 2, 2018.  He insisted that the law was "open to interpretation" and declined to acknowledge that Wenciker's conduct violated students' rights. Despite G.A.'s multiple attempts to discuss censorship, Southwick devoted the majority of his meeting with G.A. to inquire about the actions of students that he sought to characterize as disruptive, as well as the actions of a member of the press who attended the event.

60. On May 7, 2018, the ACLU sent a second letter on behalf of clients requesting documents, an expected date for a corrective action plan, and a commitment that future conversations would include specific apologies and an acknowledgment that students' rights were violated.

61. On that same date, Defendant Southwick addressed a special meeting of the Shawnee Mission School District Board to give them an update on his own investigation into the violations.

62. Instead of acknowledging the seriousness of the violations of students' free speech right, Southwick described his own ongoing, indefinite investigation as a chance to "first of all begin to look at what it was that we did right."[2]

63. Southwick then informed the board and the public that he would not be spending *too much* time on investigating this issue with graduation coming, and that his own investigation would "pick up after school is out."

64. Asked about any planned trainings for SMSD higher-ups on student First Amendment issues, Southwick responded that he had spoken to  multiple SMSD attorneys and two outside agencies about doing a panel discussion "[be]cause as you can imagine, our attorneys make money on having varying opinions."  Southwick stated that he envisioned the panel as an opportunity "to discuss issues around student rights, but basically other issues as well that operate on a day to day basis," and said he hoped to have this nebulous discussion at an upcoming administrators' retreat if allowed to do so.

65. While Southwick claimed that the Board would "accept" its mistakes "if and when" it is determined they made mistakes, he stated, "At the same time, more important than that, we're going to move forward and make sure that in subsequent events we continue to keep students and staff safe, but we also, very importantly, maintain the integrity of the classroom time that we have.  That's our primary focus[.]"

---

[2] Southwick's remarks are available online at: https://www.youtube.com/watch?v=uU9ngmNYfeg (last visited May 31, 2018), beginning at the 37:49 mark.

66. With these remarks, Southwick confirmed that the focus of his investigation will be specifically on matters *other than* ensuring that students' free-speech rights are protected in the future, while practically inviting the Court to issue the relief sought by Plaintiffs in this action.

## CAUSES OF ACTION

### Allegations Common to All Counts

67. Plaintiffs re-incorporate and re-allege the preceding paragraphs 1-66 of this Petition.

68. Defendants' actions violated clearly established First Amendment norms including the prohibitions on content-based and viewpoint-based discrimination, and violated Plaintiffs' clearly established rights to free speech and freedom of the press regarding matters of social and political debate.

69. In particular, the allowance of a protest where it was acceptable for students to advocate about generic, non-specific school-safety measures *not* involving discussion of guns or gun control, but unacceptable to take a position that did involve talk of guns or gun control, is a content-based restriction of speech in violation of the First Amendment.

70. The student speech at issue in this action was pure political speech, intended to foster debate about a serious social and political issue of national significance. The contents of the students' remarks were to be their own individual views and did not constitute school-sponsored speech bearing the school's imprimatur.

71. There was no legitimate pedagogical interest in restricting students from discussing a topic of central political debate in the United States.

72. The students' deviation from the administration's pre-approved scripts to mention terms such as "gun violence" did not, in and of itself, materially and substantially disrupt the work and discipline of the school.

73. Rather, the District's censorship stemmed from the District's wish to avoid controversy and discomfort.

74. The District's actions were deliberate and calculated, and done pursuant to an official school district policy or custom, as confirmed by statements made by District officials to the news media.

## COUNT I:  UNLAWFUL VIOLATION OF FIRST AMENDMENT RIGHTS
### (Prior Restraint and Retaliation)

*Against All Defendants for Unlawful Violation of Freedom of Speech and Freedom of the Press Guaranteed by the U.S. Constitution, First and Fourteenth Amendments*

75. Plaintiffs reincorporate and re-allege the preceding paragraphs 1-74 of this Petition.

76. The United States Constitution protects Plaintiffs against content-based censorship of speech and press.

77. The Shawnee Mission School District's multi-site policy of censoring the content of student speech at a non-school sponsored event in order to avoid controversy is unconstitutional on its face as a content-based restriction on speech in violation of the right to free speech guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

78. These same policies are unconstitutional as applied to each of the named Plaintiffs in this action, in that Defendants directly restrained the Plaintiffs from engaging in or documenting political speech; chilled them from engaging in protected speech and

press activity in the future; violated their rights to hear the messages of others; and retaliated against them for attempting to exercise their First Amendment rights.

79. Defendant Southwick, acting under the color of law, unconstitutionally and deliberately banned students from discussing guns, gun violence, and school shootings while permitting students' discussion of "school safety" and other politically neutral topics during the April 20th walkouts.

80. Defendant Southwick's actions following the protests have only confirmed the need for injunctive and declaratory relief to remedy ongoing, irreparable harm to students' First Amendment rights.

81. The threat of injury to students' First Amendment rights heavily outweighs any harm that an injunction would cause to Defendants, and injunctive relief is in the public interest.

82. Plaintiffs have suffered, and continue to suffer, damages as a result of Defendants' actions.

## COUNT II: MUNICIPAL LIABILITY

*Unlawful Prior Restraint and Retaliation in Violation of 42 U.S.C. § 1983 Pursuant to District Custom or Policy*

83. Plaintiffs reincorporate and re-allege the preceding paragraphs 1-82 of this Petition.

84. Defendant SMSD, through its own actions including its policy and custom of restricting the content of students' political speech, its actions through authorized policymakers, its ratification of the actions of others, and its failure to train employees on or implement a policy protecting students' First Amendment Rights, violated and exhibited deliberate indifference to Plaintiffs' clearly established constitutional rights.

85. Defendant Southwick through his actions violated and exhibited deliberate indifference to Plaintiffs' clearly established constitutional rights.

86. Defendants have taken no meaningful corrective action to address the censorship Plaintiffs endured. While they have offered vague apologies and general promises that they will "look into the situation," Defendants have failed to propose a corrective action plan.

87. At the time of the above-described incident, Defendants had a general custom of suppressing speech rights and an express policy of censoring students from speaking about certain political topics so as to avoid controversy.

88. The violation of Plaintiffs' free-speech and free-press rights was done under color of law, pursuant to a deliberate custom or policy of the Shawnee Mission School District.

89. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer damages.

## COUNT III: VIOLATION OF STUDENT PUBLICATIONS ACT

*Unlawful Suppression of Student Publication Because of Political Subject Matter in Violation of K.S.A. 72-7211(a)*

90. Plaintiffs reincorporate and re-allege the preceding paragraphs 1-89 of this Petition.

91. K.S.A. 72-7211(a), the Kansas Student Publications Act (the "Act"), provides that "The liberty of the press in student publications shall be protected," and that "Material shall not be suppressed solely because it involves political or controversial subject matter."

92. The confiscation of Plaintiff S.W.'s camera by Defendants' agent amounts to an attempt to suppress material – namely, the images that S.W. was attempting to gather

16

through her photojournalism efforts– solely because of the political or controversial subject matter of their subject matter.

93. S.W. and similarly situated students have suffered, and continue to suffer, irreparable harm and damages as a result of Defendants' violation of the Act, and have been chilled from exercising in activities protected by the Act.

94. The threat of injury to students such as S.W. heavily outweighs any harm to Defendants that would result from an injunction, and an injunction is in the public interest.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

A. Enter judgment in favor of Plaintiffs and against Defendants, adjudging Defendants' policies and actions to be both facially unconstitutional and unconstitutional as applied to Plaintiffs, and holding Defendants liable to Plaintiffs;

B. Enter a declaratory judgment in Plaintiffs' favor, adjudging that, by prohibiting students from engaging in or documenting speech about gun violence, Defendants violated plaintiffs' First Amendment rights to speech and press, as well as plaintiffs' rights under the Kansas Student Publications Act;

C. Issue an injunction requiring Defendant SMSD to develop and implement adequate training programs for administrators and teachers about student's free-speech and free-press rights;

D.  Enjoin Defendants from violating student First Amendment rights by
    restricting the content of students' political speech at non-school-sponsored
    events;

E.  Enjoin Defendants from confiscating the tools of student journalists or
    targeting them for removal from a school event;

F.  Enjoin Defendants from retaliating against or disciplining students for the
    exercise of their protected free-speech and free-press rights;

G.  Award Plaintiffs their money damages to the fullest extent compensable by
    law;

H.  Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C.
    §1988; and

I.  Allow such other and further relief as the Court deems just and proper.


Respectfully submitted,


By: */s/ Lauren Bonds*
Lauren Bonds, Sup. Ct. No. 27807
**ACLU Foundation of Kansas**
6701 W 64th Street, Suite 210
Phone: (913) 490-4114
Fax: (913) 490-4119
Email: lbonds@aclukansas.org


*/s/ J. Eric Weslander*
J. Eric Weslander, Sup. Ct. No. 24549
**STEVENS & BRAND, LLP**
P.O.  Box 189

900 Massachusetts Street
Lawrence, KS 66044
Phone: (785) 843-0811
Fax: (785) 843-0341
Email: eweslander@stevensbrand.com